IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

LARRY MICHAEL SLUSSER,

      Petitioner,

v.                                 Case No. 5:21-cv-00544

WARDEN W. HOLZAPFEL,[1]

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241.  (ECF No. 1).  Petitioner has paid the $5.00 filing fee. (ECF No. 5).  This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY AND THE PETITIONER'S PRESENT CLAIM

Petitioner is a federal inmate who is incarcerated at the Federal Correctional Institution, Beckley, in Beaver, West Virginia.  The petition challenges a January 14, 2021 institutional disciplinary action taken against him at FCI Edgefield in South Carolina for "Refusing Drug/Alcohol Test" in violation of Federal Bureau of Prisons ("BOP") Disciplinary Code 1.10.  Following a hearing before a Disciplinary Hearing Officer ("DHO"), Petitioner was found guilty of the charge and sanctioned with the

---

[1] Due to the change in Warden at FCI Beckley, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk is directed to modify the name of the Respondent on the docket sheet.

disallowance of 41 days of good conduct time ("GCT"), 30 days of disciplinary segregation, and loss of e-mail privileges for 90 days. (ECF No. 10 at 6). A separate incident report charging Petitioner with use or possession of drugs or alcohol (IR 3463265) was dismissed by the DHO. (ECF No. 2 at 2).

The instant petition asserts that these disciplinary proceedings violated Petitioner's due process rights because the subject incident report did not clearly document Petitioner's alleged refusal to take a second breathalyzer test, that there was insufficient evidence to support his guilt on the charge, and that the DHO was not impartial and did not consider all available evidence. Petitioner further contends that, procedurally, a second breathalyzer test was not administered within 15 minutes of the first test as required by the applicable prison policy statement. Petitioner seeks to have his incident report expunged, his GCT reinstated, and points that increased his custody classification removed. (ECF No. 1 at 6-7; ECF No. 2 at 8-9).

On November 4, 2021, the undersigned issued an Order to Show Cause, directing Respondent to file a response to Petitioner's section 2241 petition. (ECF No. 7). On December 8, 2021, Respondent, by counsel, filed a Response to the Order to Show Cause. (ECF No. 10). Petitioner filed a reply brief and a declaration on December 15, 2021. (ECF No. 11, 12). This matter is ripe for adjudication.

## ANALYSIS

### A.    Failure to exhaust administrative remedies.

"Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (per curiam); *see also United States v. Odiana*, 7 F.3d 227 (4th Cir. 1993) (per curiam) (unpublished table opinion) (noting that administrative exhaustion required prior to

filing § 2241); *United States v. Mercado*, 37 F. App'x 698, 699 (4th Cir. 2002) (per curiam) (dismissing § 2241 petition for failure to exhaust BOP's administrative remedies); *Woltz v. Ziegler*, No. 5:12−0238, 2012 WL 1599916, at *3 (S.D. W. Va. Mar. 23, 2012) ("Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under Section 2241." (internal citations omitted)), *report and recommendation adopted*, 2012 WL 1599894, at *1 (S.D. W. Va. May 7, 2012).  Under 28 C.F.R. § 542.10 *et seq.*, the BOP has established administrative remedy procedures through which an inmate may seek a formal review of an issue or complaint relating to his confinement.  Rather than filing locally with the Warden, however, an inmate challenging a DHO decision appeals directly to the Regional Director within 20 calendar days of receiving the DHO's report. *See* 28 C.F.R §§ 542.14(d)(2), 542.15(a). If the inmate is not satisfied with the Regional Director's response, he may then appeal to the Office of General Counsel in Washington, D.C. (also known as the "Central Office" level), using the appropriate forms, within 30 days of the date the Regional Director signed the response.  *See* 28 C.F.R. § 542.15(a).  An inmate is not deemed to have exhausted his administrative remedies until he has appealed and received a response at all levels. *Id.*

As noted by Respondent, where an inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  (ECF No. 10, Ex. 2).  Generally, valid reasons for delay require a situation which prevented the inmate from submitting the request within the established time frame, including: an extended period in-transit during which the inmate was separated from documents needed to prepare the request or appeal; an extended period of time during which the inmate was physically incapable

of preparing a request or appeal; an unusually long period taken for informal resolution attempts; and indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions was delayed.  (*Id.*)  An extension requires the inmate to request a memo from staff to verify the reason for the delay.  (*Id.*)

An inmate's administrative remedy filing history is available for review through SENTRY via an "Administrative Remedy Generalized Retrieval" form.  (ECF No. 10, Ex. 2).  The Administrative Remedy Generalized Retrieval form identifies each grievance by a number and letter indicating at what level the remedy was filed and the number of times the remedy was filed at that level.  (*Id.*)  A remedy filed at the institution level is identified by an "F," at the Regional Office level by an "R," and at the Central Office level by an "A."  An initial remedy filed at the institution level is assigned an "F1."  If the administrative remedy is rejected and re-filed at the institutional level, the re-filed remedy is identified as "F2."  (*Id.*)  This same system is used at all three levels.  (*Id.*)

When administrative remedy requests are rejected, the materials are returned to the inmate, and barring a designation as a "sensitive" remedy at the Regional Office level, the agency does not maintain copies of the rejected remedy request.  (*Id.*)  Rather, SENTRY records simply show that the administrative remedy was filed and rejected.  (*Id.*)  SENTRY records also indicate codes which explain the reason(s) for the rejection, as well as the dates of filing.  (*Id.*)

Review of Petitioner's records show that Petitioner has filed or attempted to file three related administrative remedies in relation to his challenge to the DHO finding at issue.  (*Id.*, Attach. A (Administrative Remedy Generalized Retrieval)).  Petitioner initially filed administrative remedy number 1069158-R1 with the Southeast Regional

Office on February 8, 2021. (*Id.* at 10). This remedy was denied by response dated March 3, 2021.[2] (*Id.*)

Petitioner attempted to appeal the denial of administrative remedy number 1069158-R1 by filing Central Office administrative remedy appeal number 1069158-A1, which was received on May 3, 2021. (*Id.*) However, this remedy appeal was rejected as untimely after review on May 28, 2021. (*Id.*) At that time, Petitioner was instructed to obtain a memorandum from staff to excuse the late filing and to refile the administrative remedy appeal. (*Id.*)[3] However, Petitioner did not obtain a memo or attempt to refile the administrative remedy appeals. (*Id.*) Accordingly, Respondent asserts that Petitioner has not properly exhausted his administrative remedies regarding the allegations in his petition and that the petition should be dismissed on that basis alone. (*Id.*)

Petitioner, on the other hand, asserts that he placed his Central Office appeal to the General Counsel's Office in the prison mailbox within 30 days of the date that the Regional Director responded to his R1 appeal on March 3, 2021. (ECF No. 11 at 3). However, he has not offered any documentary proof thereof. Petitioner cites to the "prison mailbox rule" discussed in *Houston v. Lack*, 487 U.S. 266 (1988) to assert that his appeal(s) should be considered to have been filed when he placed them in the mail. Petitioner further contends that he never received a response from the General Counsel's Office, including the alleged request for a staff memo justifying his delayed

---

[2] Respondent's brief indicates that the response was provided to Petitioner on March 8, 2021. The undersigned is uncertain if this is a typographical error or an indication of when the response was delivered to Petitioner. However, the response by the Regional Director was dated with his signature on March 3, 2021. (ECF No. 2 at 13).

[3] Petitioner's Administrative Remedy Generalized Retrieval form and Respondent's response indicate that Petitioner also filed a second administrative remedy appeal concerning the DHO proceeding on May 3, 2021 (1069158-A2), which was also rejected as untimely and required the same documentation from Petitioner's unit staff. (ECF No. 10 at 8 n.2 and Ex. 2, Attach. A at 11).

appeals. (ECF No. 11 at 4). Petitioner asserts that he filed the instant § 2241 petition after the 40-day period for such a response expired, believing that the administrative remedy was deemed denied. (ECF No. 2 at 3). Petitioner further claims that he was in transit between FCI Edgefield and FCI Beckley throughout that time. (*Id.*) Petitioner suggests that this fact constitutes cause and prejudice to excuse his failure to properly exhaust his administrative remedies. (*Id.*)

As noted by Respondent, an inmate's "[f]ailure to exhaust may only be excused by a showing of cause and prejudice." *Green v. Fed. Bureau of Prisons*, No. 7:05cv00713, 2006 WL 903229, at *1 (W.D. Va. Apr. 7, 2006) (citing *McClung*, 90 F. App'x at 445). [E]xhaustion should only be excused 'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" *Woods v. Warden*, No. 7:17cv00358, 2019 WL 489135, at *2 (W.D. Va. Feb. 7, 2019) (citing *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982)). According to Respondent, Petitioner's own conduct in failing to provide a memorandum from staff with a reason for the delay in his filing prevented him from properly exhausting his remedies. (ECF No. 10 at 9 and Ex. 2, Attach. A). Respondent further asserts that Petitioner's administrative remedy filing history "demonstrates he both understands and has access to the program." (*Id.*, Ex. 2, Attach. A). Thus, Respondent asserts that "Petitioner should not be allowed to escape the required exhaustion of administrative remedies due to his own neglect" and such facts do not qualify as an "exceptional circumstance of peculiar urgency" to justify waiver of the exhaustion requirement. (*Id.*)

Based upon an exhaustive review of the record before this court, it appears that Petitioner received and attached to his initial petition the Regional Director's response dated March 3, 2021. (ECF No. 2 at 13). Petitioner further claims that he placed his

appeal to the Central Office in the mail "within the 30 days of March 3, 2021[.]" (ECF No. 11 at 4). However, he offers no proof thereof and, notably, has not established the exact date that he mailed the documents or placed them with prison staff for mailing. Petitioner further contends that he could not make a copy of the documents "due to Covid-19 restrictions which prevented him from making copies due to the timeliness of making the appeal." (*Id.*)

The evidence of record further demonstrates that the Central Office did not receive the appeal documents until May 3, 2021 and rejected the same on May 28, 2021, requesting documentation to justify the delayed filing. (ECF No. 10, Ex. 2 at 3, ¶¶ 12, 14). Attachment A to the Declaration of Charles Nevils provided with Respondent's response suggests that Petitioner was either in transit or holdover status between facilities, or in a temporary facility, between May 12, 2021 and June 16, 2021. (ECF No. 10, Ex. 1, Attach. 1).[4] Thus, it does appear that, during the operative time period when he should have received the rejection documents and refiled his administrative remedy with the appropriate support, Petitioner was in transit and may not have received the rejection documents and request for additional information.

According to the applicable regulations, an appeal "is considered filed on the date it is logged into the Administrative Remedy Index as received." 28 C.F.R. § 542.18. In *Fex v. Michigan*, 507 U.S. 43, 46-47, 52 (1993), the Supreme Court held that the prison mailbox rule did not apply to the Interstate Agreement on Detainers' ("IAD") 180-day final disposition obligation because the specific language in the statute of "within 180 days after [the petitioner] shall have cause to be delivered" required actual delivery to the court and prosecuting officer in the jurisdiction where the detainer is

---

[4] Petitioner contends that he was in transit status even earlier, beginning in April of 2021. (ECF No. 11 at 5).

7

lodged before the time period commenced.  A broad interpretation of *Fex*, then, suggests that the rule cannot apply when a statute or regulation specifically defines that a document is considered filed upon actual receipt or some other definitive time period.

While it does not appear that the Fourth Circuit has directly addressed the issue in the context of the BOP administrative remedy process, other federal courts have concluded that the "prison mailbox rule" does not apply to the BOP administrative remedy/appeal process because of the language of the regulation, BOP policy, and case law.  *See, e.g. Hampton v. Williams*, No. 4:19-cv-1664, 2019 WL 7372318, at *2 (N.D. Ohio Dec. 31, 2019), *aff'd*, No. 20-3158, 2021 WL 3519333 (6th Cir. Apr. 28, 2021); *Goddard v. Alexakos*, No. 5:16-cv-215-KKC, 2018 WL 1168611, at *7 (E.D. Ky. Mar. 6, 2018) (28 C.F.R. § 542.18 "clearly provides" that an appeal is considered "filed" on the date it is received and, "[i]n the absence of clear, binding authority directing that the prison mail box applies in the administrative remedy/appeal process, the Court is reluctant to apply the rule in this case. This finding is also consistent with . . . the BOP's internal regulations[.]") (citations omitted) (distinguishing *Cordoba v. Shartle*, 2010 WL 2572854 (N. D. Ohio 2010) and *Vasquez v. Shartle*, 2011 WL 1004934 (N.D. Ohio 2011) (mailbox rule does apply to administrative appeal) on the grounds that neither addressed the significance of 28 C.F.R. § 542.18's definition of the term "filed"); *see also Tucker v. Jones*, No. 2:17-cv-133, 2018 WL 3557462, at *5 (S.D. Ga. July 24, 2018) ("The "plain language of § 542.18 thwarts Tucker's attempt to rely upon the prison mailbox rule to cure the untimeliness of his BP-10 filing. The BOP's internal regulations also contradict application of the prison mailbox rule.") (collecting cases), *report and recommendation adopted*, No. 2:17-cv-133, 2018 WL 4688721 (S.D. Ga. Sept. 28, 2018);

*but see Censke v. United States*, 947 F.3d 488, 491-93 (7th Cir. 2020) (prison mailbox rule applies to administrative claims under Federal Tort Claims Act).

Here, § 542.18, which is applicable to Petitioner's administrative remedy appeal, specifically defines that the appeal is considered filed upon receipt.  28 C.F.R. § 542.18. Thus, the undersigned proposes that the presiding District Judge **FIND** that the "prison mailbox rule" does not apply in the context of a prison administrative remedy process and Petitioner's appeal was not considered "filed" until it was received by the Central Office on May 3, 2021.  Therefore, it was untimely filed.

Even so, because the Central Office attempted to give Petitioner the opportunity to defend the late filing, and Petitioner apparently did not receive the rejection documentation and request for justification for the late filing due to his transit status, out of an abundance of caution, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's failure to receive the rejection documents constitutes cause and prejudice justifying excusal of the exhaustion requirement and review of the merits of the petition.

### B.   Petitioner received all process that was due and there was sufficient evidence to support his guilt.

Respondent's Response addresses the Bureau of Prisons' ("BOP") rules for inmate discipline, which are found in 28 C.F.R. Part 541 *et seq*.  According to these rules, where a staff member believes an inmate has violated a BOP regulation, the staff member prepares an incident report and provides the inmate with a written copy of the charges against him, normally within 24 hours of when staff becomes aware of the alleged violation.  *See* 28 C.F.R. § 541.5(a).  Thereafter, an investigating officer is assigned to inform the inmate of the charges and take a statement from the inmate.  An inmate is advised that he has a right to remain silent.  While an adverse inference may

be drawn from his silence, it may not, standing alone, be used to support a finding that he committed the prohibited act. *Id.*, § 541.5(b).

Next, a Unit Disciplinary Committee ("UDC") will review the incident report, usually within five days of its issuance. The inmate is permitted to appear and make a statement and present documentary evidence before the UDC either in person or electronically, except during the UDC's deliberations, or if institutional security would be jeopardized by his presence. *Id.*, §§ 541.7(c), (d), and (e). The UDC then makes a decision based upon at least some evidence, and if there is conflicting evidence, based upon the greater weight thereof. *Id.*, § 541.7(e).

The UDC may determine whether the inmate committed the prohibited act as charged or refer the case to a Disciplinary Hearing Officer ("DHO") for further proceedings. *Id.*, § 541.7. When charges are referred to the DHO, the UDC advises the inmate of the rights afforded to him at the DHO hearing. *Id.*, § 541.7(g). An inmate may request to have a staff representative and/or witnesses at the DHO hearing. *Id.*, § 541.8. At the hearing, the inmate may make a statement, present documentary evidence, and present witnesses on his behalf, subject to institutional security issues. *Id.*, § 541.8(f).

The DHO considers all evidence presented at the hearing and determines whether the inmate committed the infraction, or whether further investigation is needed. *Id.*, § 541.8(a). The DHO prepares a written record of the proceedings, which need not be verbatim. The record should document the advisement of the inmate's rights, the DHO's decision, the evidence relied upon in making the decision, and the reasons for the sanctions imposed. *Id.*, § 541.8(h).

According to Respondent's Response, on January 4, 2021, FCI Edgefield staff member R. Mack prepared Incident Report ("IR") 3463258 charging Petitioner with

Refusing Drug/Alcohol Test in violation of BOP discipline code 110.  (ECF No. 10, Ex. 1,

Attach. B (IR No. 3463258) §§ 9-13).  The report describes the factual basis for the IR:

> On January 4 2021 at approximately 2025 I entered special housing unit
> to conduct a second breathalyzer test on Inmate SLUSSER, LARRY,
> #43981-074. Inmate Slusser was given an order to submit to a second
> breathalyzer test to which he refused (first test was positive at .188).

(*Id.*, § 11).  A copy of the IR was provided to Petitioner on January 5, 2021. (*Id.*, §§ 15-

16).  Petitioner was advised of his rights at that time. (*Id.*, § 23).  Petitioner indicated

that he understood his rights but declined to make any statement about the charge.  (*Id.*,

§ 24).

On January 6, 2021, the Unit Disciplinary Committee ("UDC") reviewed the

charge, including Petitioner's denial of the allegation that he refused to blow in the

breathalyzer, and referred it for a hearing before a Disciplinary Hearing Officer

("DHO").  (*Id.*, §§ 17-21).  Petitioner was provided with a Notice of Disciplinary Hearing

Before the DHO that same day and acknowledged that he was advised of his rights.

(ECF No. 10, Ex. 1, Attach. C and D).  Petitioner did not request that any witnesses or

staff representative be made available for the hearing.  (*Id.*)

The DHO hearing was held on January 14, 2021.  (ECF No. 10, Ex. 1, Attach. E).

At the DHO hearing, Petitioner acknowledged he understood his rights and was

prepared to proceed with the hearing. (*Id.* § III).  Petitioner requested no witnesses and

submitted no documentary evidence.  (*Id.*)  At the hearing, Petitioner told the DHO, "I

was drunk but I do not remember the officer ordering me to take another test."  (*Id.*, §§

III, V).  Relying upon this statement from Petitioner, as well as the reporting officer's

statement contained in the IR, other staff memoranda, and photographs, the DHO

found Petitioner guilty of committing the prohibited act as charged.  (*Id.* §§ III, V).

11

The DHO imposed the sanctions set forth *supra*.  (*Id.*, § VI).  The DHO documented that the sanctions were appropriate because the conduct "creates an inability of staff to implement the established drug/alcohol screening policy" and provide orderly operation of the facility.  (*Id.*, § VII).  The DHO further stated that the sanctions were imposed to emphasize that Petitioner "will be held responsible for his actions/behavior at all times."  (*Id.*)  The loss of privileges, disallowance of GCT, and segregation were imposed due to Petitioner's "poor institution adjustment and behavior," "the severity of the offense," and "to deter this activity in the future."  (*Id.*)

Petitioner was advised of his appeal rights.  (*Id.* at 33, § VIII).  Petitioner was provided a copy of the DHO Report on January 19, 2021.  (*Id.*, § IX).  Thereafter, he timely, but unsuccessfully, appealed to the Regional Director on February 8, 2021.  (ECF No. 2 at 13).  As previously addressed by Respondent, Petitioner's Central Office appeal was not received until May 3, 2021, outside the 30-day deadline.  Thus, his appeal was rejected, and Petitioner did not refile a revised appeal thereafter.  Nonetheless, he filed the instant § 2241 petition on September 30, 2021.  (ECF Nos. 1, 2).

Petitioner contends that his Fifth Amendment right to due process was violated during these prison disciplinary proceedings.  Prison disciplinary proceedings are not criminal prosecutions. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." *Id.* When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1.    giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

12

2.    providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3.    allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4.    permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5.    providing impartial fact finders.

*Id.* at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the process required for an institutional disciplinary proceeding. The record demonstrates that he received written notice of the charge against him more than twenty-four (24) hours before the DHO hearing held on January 14, 2021. Additionally, Petitioner was properly advised of his rights with respect to appearance and presentation of evidence at the proceeding. Petitioner was also afforded the opportunity, but declined, to have both a staff representative and to call witnesses on his own behalf and was offered the opportunity to present a defense at the hearing. According to the written record, Petitioner told the DHO that he "was drunk" and "did not remember the officer ordering [him] to take another test." (ECF No. 10, Ex. 2, § V). The DHO further considered the statement of the charging officer that Petitioner refused the second test, another staff memo, and a photograph. (*Id.*, § III D).

Although the IR summarily stated that Petitioner refused to take the second test, nothing more is required under constitutional precedent. *See Pizzuti v. Baltazar*, No. 3:14-cv-00956, 2015 WL 224702, at *7 (M.D. Pa. Jan. 15, 2015) (Prison officials must only provide sufficient factual detail to make an inmate aware of the disciplinary charge

13

against him in and allow him to prepare a defense).  As noted by Respondent, "Petitioner does not claim that the failure to record a detailed transcript of the encounter in which he refused a breathalyzer test impeded his ability to defend against the charge in any way" and he did not object to the contents of the IR before or at the time of the DHO hearing.  (ECF No. 10 at 11).  Petitioner's declaration, on the other hand, contends that he did raise the issue of the timing of the second test before the DHO and further claims that he did not refuse the second breathalyzer.  (ECF No. 12 at 2-3).

Petitioner claims that the DHO was not impartial because he failed to consider all the evidence, including Petitioner's alleged statement that the second breathalyzer test was not administered 15 minutes after the first test, as specified by the applicable policy statement.  This alleged assertion is not reflected in the DHO's written report and the DHO's declaration asserts that Petitioner did not raise that issue or any other alleged problems with the IR or other evidence at the hearing.  (ECF No. 10, Ex. 1 at 4 and Ex. E).  Thus, the record before the court does not demonstrate that Petitioner raised the issues now asserted in his petition during the DHO process.  (ECF No. 10, Ex. 1, Attachs. B, E).

As argued by Respondent, there is a "presumption of regularity [that] attaches to the actions of Government agencies," including the accuracy of prison records, *see U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001), such that "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties," *United States v. Chem. Found., Inc.*, 272  U.S. 1, 14-15 (1926).  (ECF No. 10 at 12-14).  Accordingly, Respondent asserts:

> Petitioner did not raise the issue of the timing of the second test or challenge the sufficiency of the IR at the time of the DHO hearing or

14

before even though the information was available to him well in advance of the hearing. Petitioner has offered no evidence that would overcome the presumption of regularity regarding the disciplinary documents, so his allegations are without merit, and the defenses he seeks to have considered are not available.

(*Id.* at 14).

Even to the extent that Petitioner claims that the DHO was not impartial because he did not consider Petitioner's alleged assertion that the second test was not timely administered, Petitioner was not ultimately found guilty of possession of alcohol or drugs, or being intoxicated, so the fact that the test was not timely administered in accordance with the prison policy was not material to his finding of guilt and, thus, did not prejudice him. Where a policy violation is not prejudicial to the inmate, it cannot amount to a due process violation. *See Von Kahl v. Brennan,* 855 F. Supp. 1413, 1421-22 (M.D. Pa. 1994); *see also McClure v. Mass,* 885 F.2d 875 (9th Cir. 1989) (unpublished table opinion) (citing *United States v. Loud Hawk*, 816 F.2d 1323, 1324–25 (9th Cir. 1987) (internal citations omitted)).

In accordance with BOP regulations, the DHO in Petitioner's case did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges. After the disciplinary hearing, the DHO provided Petitioner with a written report summarizing the hearing, which included a statement of the evidence upon which the decision was made and the reasons for Petitioner's sanctions. Thus, there is no evidence to demonstrate that the DHO was not impartial or acted outside his authority.

Moreover, there was sufficient evidence in the record to support the DHO's finding of guilt and the sanctions imposed. In *Superintendent, Mass. Corr. Inst. v. Hill*, the Supreme Court held that the revocation of good conduct time meets minimum due

process requirements if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." 472 U.S. 445, 454 (1985).  In making this assessment, the federal court does not weigh the credibility of evidence or witnesses.  *Id.* at 455-56.  So long as there is evidence to support the DHO's determination, it must be upheld by the court.  Here, the greater weight of the evidence supported a finding of Petitioner's guilt.

Thus, there is no basis to find a violation of either Petitioner's procedural or substantive due process rights with respect to these disciplinary proceedings and the resulting sanctions, including the loss of 41 days of GCT and change in his custody classification points.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the instant petition fails to state a claim upon which relief can be granted.  Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and dismiss this civil action from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.

16

Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on the opposing party and Judge Volk.

The Clerk is directed to file this Proposed Findings and Recommendation, to transmit a copy to counsel of record, and to mail a copy to Petitioner.

August 7, 2023

Dwane L. Tinsley
United States Magistrate Judge

17